04 10789 RCL

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MODHI GUDE and ARJI GAUTHAMI, On Behalf of Themselves and All Others Similarly Situated,,<br><br>Plaintiffs,<br><br>vs.<br><br>VASO ACTIVE PHARMACEUTICALS, INC., STEPHEN G. CARTER and JOHN J. MASIZ,<br><br>Defendants. | No. MAGISTRATE JUDGE Collings<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br><br>DEMAND FOR JURY TRIAL |

RECEIPT # 55382
AMOUNT $ 150
SUMMONS ISSUED yes
LOCAL RULE 4.1 ✓
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. ___
DATE 4/20/04

## SUMMARY AND OVERVIEW

1. This is a securities class action on behalf of all purchasers of the common stock of Vaso Active Pharmaceuticals, Inc. ("Vaso" or the "Company") between December 11, 2003 and March 31, 2004 (the "Class Period"), against Vaso and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2. Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on vaso active lipid encapsulated, or VALE, transdermal delivery technology drugs. Currently, Vaso markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company is planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

3. On April 1, 2004, *Reuters* issued a release entitled "UPDATE - SEC suspends trading in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts-based company of an FDA approval of certain key products and regulatory consequences of the future application of their primary product, among others.
>
> Vaso Active was not immediately available for comment.
>
> The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.
>
> Vaso shares closed at $7.59 Wednesday on Nasdaq.

4. The true facts, which were known by each of the defendants but actively concealed from the investing public during the Class Period, were as follows:

(a) The Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston" Massachusetts was grossly misleading in that:

(i) the New England Medical Center had nothing to do with the study associated with the "clinical trial";

(ii) the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and

(iii) the trial was ***not*** supervised by "***independent*** physicians" – it was overseen by ***one*** podiatrist who was not independent but actually "handpicked" by the Company's majority shareholder and handsomely compensated.

(b) The Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old.

(c) The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value. In fact, the "association" is not widely known of or respected in the medical community. It was headquartered in a hotel until it was moved to the President's medical office. Moreover, in exchange for the questionable endorsement the President of the Association, Vaso was asked to make a donation to an association scholarship program.

(d) Contrary to defendant Masiz's claim that there was significant demand for the Company's stock at an "institutional level" – so much so that the Company, in response to this demand, consummated a three-for-one stock split – there was *de minimus*, if any, institutional demand for the Company's shares. Moreover, there are no institutional or retail analysts who even follow the Company.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

6. (a) Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

(b) The Company's principal executive offices are in Danvers, Massachusetts, where the day-to-day operations of the Company are directed and managed.

## THE PARTIES

7. Plaintiffs Modhi Gude and Arji Gauthami purchased Vaso common stock as described in the attached certification and was damaged thereby.

8. Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on VALE transdermal delivery technology drugs. Currently, Vaso markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company is planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

9. Defendant John J. Masiz ("Masiz") was the President and CEO of Vaso. He is also the CEO and Chairman of BioChemics, the Company's controlling shareholder.

10. Defendant Stephen G. Carter ("Carter") was the Chief Scientific Officer ("CSO") of Vaso. He is also the CSO of BioChemics, the Company's controlling shareholder.

11. The individuals named as defendants in ¶¶9-10 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Vaso's Registration Statement, press releases and presentations to securities analysts, money and portfolio managers and institutional

investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein at ¶¶19-21, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

### SCIENTER

12. In addition to the above-described involvement, each Individual Defendant had knowledge of Vaso's problems and was motivated to conceal such problems. Masiz and Carter, as CEO and CSO, respectively, were responsible for reporting to and communications with the market. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market.

13. Defendants were motivated to engage in the fraudulent practices alleged herein in order to obtain financing via the Company's IPO and subsequent private placement for the Company and create a market for their shares and options as well as protect BioChemics' financial interest in the Company.

### FRAUDULENT SCHEME AND COURSE OF BUSINESS

14. Each defendant is liable for (i) making false statements, or (ii) failing to disclose adverse facts known to him about Vaso. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Vaso common stock was a success, as it (i) deceived the investing public regarding Vaso's prospects and business; (ii) artificially inflated the prices of

- 4 -

Vaso's common stock; (iii) allowed defendants to arrange to sell and actually sell $15 million worth of Vaso shares at artificially inflated prices; and (iv) caused plaintiffs and other members of the Class to purchase Vaso common stock at inflated prices.

### BACKGROUND

15. Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on VALE transdermal delivery technology drugs. Currently, the Company markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company, at the time of the IPO, was planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

16. Vaso is essentially an early stage company focused on commercializing, marketing and selling over-the-counter, or OTC, pharmaceutical products. It began its operations as a division of BioChemics, Inc. in January 2001, and has only operated as an entity independent of BioChemics since January 2003. The Company's operating history was extremely limited. The deFEET, Athlete's Relief and Osteon products were in the early stages of commercialization as the Company prepared to go public. With the exception of the introduction of deFEET to the marketplace by BioChemics while the Company was still a division of BioChemics (a company also controlled by the Individual Defendants), it had not yet commercialized, marketed or sold any products or recognized significant revenue from product sales.

17. The Company claimed it needed to complete its IPO in order to:

(a) fund the continued development, commercialization and sale of its products and product candidates, which the Company estimated would require approximately $1.1 million (19.4% of net proceeds);

(b) to implement its strategic marketing and commercialization plan, which the Company estimated would require approximately $1.9 million (33.5% of net proceeds), of which approximately $1.2 million was allocated to fund its radio advertising campaign;

(c) to recruit and hire individuals for key senior management positions, which the Company estimated would require approximately $200,000 (3.5% of net proceeds);

(d) to cover the cost of providing sales incentives, products samples and discounts, which the Company estimated would require approximately $350,000 (6.2% of net proceeds);

(e) to repay BioChemics approximately $99,000 (1.7% of net proceeds) for management fees charged back to the Company since it became a stand-alone entity upon its incorporation for centralized accounting, data processing, utilities, office space rental, supplies, telephone and other BioChemics corporate services and infrastructure costs, *and* approximately $347,000 (6.1% of net proceeds) for other operational charges paid by BioChemics to third parties on its behalf since that time; and

(f) to provide working capital and for general corporate purposes, which the Company estimated would require approximately $1.68 million (29.6% of net proceeds).

18. By infusing capital in Vaso, BioChemics (also controlled by defendants) would blossom. BioChemics' balance sheet and prospectus improved dramatically upon the offering and further improved the Individual Defendants' own net worth.

**DEFENDANTS' FALSE AND MISLEADING REGISTRATION STATEMENT**

19. The Company filed its Registration Statement on December 11, 2003. According to the Company's Registration Statement, the Company's plans for its key product were as follows:

> Osteon and Athlete's Relief will now be marketed, distributed, commercialized and sold by us in the United States. During the course of the 12 month period immediately following this offering, all deFEET branded product

currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET.

All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. ***In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period.*** There were two groups in the study, one treated with deFEET and the other with Schering-Plough's Tinactin®. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology ....

## POST IPO STATEMENTS

20. On February 19, 2004, the Company issued a release entitled "Vaso Active Pharmaceuticals Declares 3 for 1 Stock Split." The release stated in part:

Vaso Active Pharmaceuticals, Inc. (Vaso Active) of Danvers, Massachusetts, announced today that the Board of Directors has declared a 3 for 1 stock split effective in the form of a 200 percent stock dividend payable on or about March 5, 2004 to holders of record of both Class A and Class B common stock as of February 23, 2004. Under the terms of this stock split, holders of the Company's Class A and Class B common stock will receive a dividend of two shares of Class A and Class B common stock for every one share of Class A and Class B common stock held on that record date. The dividend will be paid in authorized but unissued shares of Class A and Class B common stock of the Company.

The Company anticipates that the combined amount of issued and outstanding shares of both the Class A and Class B common stock after the split will be increased from 3,428,000 shares to 10,284,000 shares.

***John Masiz, Chief Executive Officer and Chairman of Vaso Active stated[:] "One of the ways many institutions measure investment appeal is through the liquidity of a security. Recently, there has been significant demand for our***

*common stock at the institutional level. However liquidity has proved to be an obstacle. To help resolve this, the Board of Directors has declared this 3-for-1 stock split to increase our liquidity to the public market place, thus enhancing our securities' appeal to both retail and institutional investors."*

21.  On March 17, 2004, the Company issued a press release entitled "Vaso Active Pharmaceuticals Completes Financing at a Premium." The press release stated in part:

> Vaso Active Pharmaceuticals, (Vaso Active) of Danvers, Massachusetts, is pleased to announce that it has entered into a private placement transaction in the amount of $7,500,000 with an institutional investor. The investment which is in the form of an 18 month 2% Convertible Note, is convertible into shares of Class A common stock at a conversion rate of $9 per share, at the option of the investor. Both principal and interest are payable in cash or in shares of Class A common stock, at the option of Vaso Active. The purchase agreement includes anti-hedging provisions and the maturity date may be extended for up to two years at the option of the investor. In addition, Vaso Active issued to the investor warrants to purchase 166,667 shares of Class A common stock at an exercise price of $8.75 per share.
>
> Mr. John J. Masiz, President and Chief Executive Officer of Vaso Active was very pleased that Vaso Active was successful in consummating this institutional private placement at what Mr. Masiz considered favorable terms. "The ability to secure additional funds through the completion of this private placement gives Vaso Active significant new working capital to augment the working capital derived from its IPO. This will enhance Vaso Active's capital base with which to operate and will permit the Company to take advantage of strategic opportunities that arise in the course of growing our business. In addition, the execution of this agreement at a premium to the current market price of our common stock underscores the value of our technology to a material investor."

22.  On April 1, 2004, *Reuters* issued a release entitled "UPDATE - SEC suspends trading in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts-based company of an FDA approval of certain key products and regulatory consequences of the future application of their primary product, among others.
>
> Vaso Active was not immediately available for comment.

The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.

Vaso shares closed at $7.59 Wednesday on Nasdaq.

23.  The true facts which were known by each of the defendants, but actively concealed from the investing public during the Class Period, were as follows:

(a)  The Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston" Massachusetts was grossly misleading in that:

(i)  the New England Medical Center had nothing to do with the study associated with the "clinical trial";

(ii)  the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and

(iii)  the trial was *not* supervised by "*independent* physicians" – it was overseen by *one* podiatrist who was not independent but actually "handpicked" by the Company's majority shareholder and handsomely compensated.

(b)  The Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old.

(c)  The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value. In fact, the "association" is not widely known or respected in the medical community. It was headquartered in a hotel until it was moved to the President's medical office. Moreover, in exchange for the questionable endorsement the President of the Association, Vaso was asked to make a donation to an association scholarship program.

(d)     Contrary to defendant Masiz's claim that there was significant demand for the Company's stock at an "institutional level" – so much so that the Company, in response to this demand, consummated a three for one stock split – there was *de minimus*, if any, institutional demand for the Company's shares. Moreover, there are no institutional or retail analysts who even follow the Company.

### FIRST CLAIM FOR RELIEF

#### For Violation of §10(b) of the 1934 Act and Rule 10b 5
#### Against All Defendants

24.     Plaintiffs incorporate ¶¶1-23 by reference.

25.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

26.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiffs and others similarly situated in connection with their purchases of Vaso common stock during the Class Period.

27.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Vaso common stock. Plaintiffs and the Class would not have purchased Vaso common stock at the prices they paid, or at all, if they had been

aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

28.  As a direct and proximate result of these defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their purchases of Vaso common stock during the Class Period.

## SECOND CLAIM FOR RELIEF

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

29.  Plaintiffs incorporate ¶¶1-28 by reference.

30.  The Individual Defendants acted as controlling persons of Vaso within the meaning of §20(a) of the 1934 Act. By reason of their positions as officers and/or directors of Vaso, and their ownership of Vaso stock, the Individual Defendants had the power and authority to cause Vaso to engage in the wrongful conduct complained of herein. Vaso controlled each of the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and Vaso are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

31.  Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Vaso common stock (the "Class") on the open market during the Class Period. Excluded from the Class are defendants.

32.  The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Vaso had more than 9 million shares of stock outstanding, owned by hundreds if not thousands of persons.

33. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a) Whether the 1934 Act was violated by defendants;

    (b) Whether defendants omitted and/or misrepresented material facts;

    (c) Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d) Whether defendants knew or deliberately disregarded that their statements were false and misleading;

    (e) Whether the price of Vaso's common stock was artificially inflated; and

    (f) The extent of damage sustained by Class members and the appropriate measure of damages.

34. Plaintiffs' claims are typical of those of the Class because plaintiffs and the Class sustained damages from defendants' wrongful conduct.

35. Plaintiffs will adequately protect the interests of the Class and have retained counsel, who are experienced in class action securities litigation. Plaintiffs have no interests which conflict with those of the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

A. Declaring this action to be a proper class action pursuant to FRCP 23;

B. Awarding plaintiffs and the members of the Class damages, interest and costs;

C. Awarding reasonable costs and attorneys' fees; and

D.  Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: April 20, 2004

MOULTON & GANS, P.C.

*/s/ Nancy Freeman Gans*
NANCY FREEMAN GANS, BBO #184540

33 Broad Street, Suite 1100
Boston, MA 02109
Telephone: 617/369-7979
617/369-7980 (fax)

**MILBERG WEISS BERSHAD
   HYNES & LERACH LLP**
WILLIAM S. LERACH
DARREN J. ROBBINS
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

**SCOTT + SCOTT, LLC**
DAVID R. SCOTT
108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818
860/537-4432 (fax)

*Attorneys for Plaintiffs*

S:\CasesSD\Vaso\Cpt Vaso_2.doc

## PLAINTIFF CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

MODHI GUDE & ARJI GAUTHAM I ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and retains Scott + Scott, LLC, and such co-counsel it deems appropriate to associate with, to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel, or in order to participate in any action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transaction(s) in the Vaso Active Pharmaceuticals ("VAPH") security that is the subject of this action during the Class Period is/are as follows:

| | No of Shares/Securities | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| MODHI GUDE | 300 | B | 3/4/04 | 7.45 |
| " | 2000 | B | 3/8/04 | 12.42 |
| " | 300 | B | 3/12/04 | 8.30 |
| " | 2000 | B | 3/8/04 | 12.40 |
| Arji Gauthami | 4500 | B | 2/20/04 | 10.97 (Split adjusted) |

5. During the three years prior to the date of this Certification, Plaintiff has not served, or sought to serve as a class representative in a federal securities fraud case, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19 day of APRIL, 2004, at OKLAHOMA CITY (city, state).

Printed Name: MODHI GUDE / ARJI GAUTHAMI

Signature: [signatures] / A. Gauthami